UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS MICHELLE PARKER, an individual, | CV 17-03234-RSWL-PJWx |
| Plaintiff, | **ORDER re: Defendant Princess Cruise Line, Ltd.'s Motion for Summary Judgment** [26] |
| v. | |
| PRINCESS CRUISE LINE, LTD., WHICH WILL DO BUSINESS AS PRINCESS CRUISES, a foreign entity; DE BOOTJES VAN GENT, a foreign corporation; and DOES 1 through 10, inclusive | |
| Defendants. | |

Currently before the Court is Defendant Princess Cruise Line, Ltd.'s ("Defendant") Motion for Summary Judgment [26] ("Motion").  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

**A.  Factual Background**

   Plaintiff Doris Michelle Parker ("Plaintiff") was a passenger aboard the cruise ship REGAL PRINCESS for a voyage from April 17, 2016, to May 1, 2016. Declaration of Lisa M. Black ("Black Decl.") ¶ 4, ECF No. 26-6; id. Ex. 1, ECF No. 26-7.  Defendant Princess Cruise Line, Ltd. ("Defendant") owned and operated REGAL PRINCESS.  Compl. ¶ 8, ECF No. 1.  Plaintiff booked a "Ghent by Canal Cruise" shore excursion for April 28, 2016.  Black Decl., Ex. 1 at 16; Compl. ¶ 17, ECF No. 1.  Plaintiff's claims arise from an incident that occurred on the Ghent by Canal Cruise excursion in Ghent, Belgium, where Plaintiff allegedly slipped and fell while de-boarding a canal boat.  Compl. ¶ 19.  The Ghent by Canal Cruise was operated by De Buck Travel NV ("De Buck").  Declaration of Brianna Freeman ("Freeman Decl.") ¶ 2, ECF No. 26-10.  De Buck provides transportation for cruise passengers from the ship to the starting point of the excursion, as well as tour guides and fully crewed canal boats.  Id.  No Princess personnel operate or staff any part of the excursion, other than an occasional Princess personnel "escort." Id.

   Prior to the start of the cruise, Defendant's passengers are required to use the Princess "Cruise Personalizer," an internet-based system where passengers review travel-related documents including

2

boarding passes, the Princess passenger ticket contract ("the Contract"), and a travel summary. Black Decl. ¶ 6; id. Ex. 2, ECF No. 26-8. Before printing their boarding passes, the system requires passengers to click a dialog box acknowledging that they accept the terms and conditions of the Contract. Id. ¶¶ 8-9. Plaintiff printed her boarding pass using the Cruise Personalizer on March 13, 2016. Id., Ex. 1 at 20.

The Contract contains an introductory statement on the first page in bold capital letters that urges passengers to read the Contract, and specifically directs them to review Paragraph 14. Black Decl. ¶ 11. Paragraph 14(G) of the Contract states, in relevant part:

> <u>Excursions, Shoreside Services and Other Transportation</u>: All travel facilities, tours, activities, products or services, other than aboard [Defendant's] vessels and tenders provided in connection with, before, after or during Your Cruise, including . . . shore excursions . . . are provided, owned and/or operated by independent contractors whose employees, facilities, conveyances, products and services are not subject to [Defendant's] supervision or control . . . [Defendant] accepts no liability for any loss, delay, damage, injury, death, misrepresentation arising from any excursion, service or transportation . . . [Defendant] makes no warranty, either express or implied, regarding the suitability, safety, insurance or other aspects of any such contractors, transportation, tours, services, products or facilities. Any liability for such services will be governed by this [] Contract . . . .

Id. ¶ 12; see also id. Ex. 2, ¶ 14(g). These terms are also available to the general public on Defendant's

website.  Black Decl. ¶ 10.

Defendant's relationship with De Buck is defined by the terms in two documents: (1) Global Shore Excursion Operator Agreement Terms and Conditions ("Operator Agreement"); and (2) Carnival Corporation Tour Operator Manual ("Operator Manual").  Declaration of Drumalds ("Drumalds Decl.") ¶¶ 3-4, ECF No. 26-2.  De Buck accepted the terms of both.  Id. ¶ 5.  Section 1 of the Operator Agreement contains the following definitions:

> 1.6 **"Guest"** or **"Guests"** means passengers onboard a Vessel.
> 1.7 **"Operating Company"** means a subsidiary or affiliate of Carnival that operates a cruise line . . . including . . . Princess Cruise Lines, Ltd. . . . .
> 1.8 **"Operator"** means the entity, including its shareholders, agents and employees, that is entering into this Agreement to provide Shore Excursions to Carnival and Operating Company Guests.
> 1.11 **"Shore Excursion"** or **"Shore Excursions"** means the sightseeing trip(s) or activiy(ies) offered by Operator as contemplated by this Agreement.

Id. ¶ 3.  Section 6.5 of the Operator Agreement provides that, "Operator acknowledges that the control and responsibility of all aspects of the Shore Excursion remain exclusively with Operator."  Id. Section 15.4 titled "Independent Contractor Status" states:

> The parties agree that Operator shall be treated as an independent contractor of Carnival and the Operating Companies and shall not be considered an employee . . . Neither Carnival, nor any Operating Company, shall furnish a salary, sick pay, vacation, insurance coverage, retirement benefits, worker's compensation insurance or any

other fringe benefit to Operator . . . . Nothing
in this Agreement shall be construed as creating
a partnership, joint venture or employer-
employee relationship amongst Operator and any
of Carnival or any Operating Company . . . .

Id. Finally, Section 6(a) of the Operating Manual

titled "Operator Responsibility" states, in relevant

part:

The Operator is responsible for the safety and
security of passengers and crew. The Operator
and its authorized sub-contractors are expected
to perform all shore excursions with reasonable
care and skill. The responsibility will at all
times remain with the Operator. It is essential
that your excursions are safe, secure and
suitable for the age and physical abilities of
the participating passengers.

Id.

**B.    Procedural Background**

Plaintiff filed her Complaint [1] on April 28,

2017. Defendant filed this Motion [26] on September

20, 2018. Plaintiff filed a Notice of Non-Opposition

[27] on October 16, 2018.

**II. DISCUSSION**

**A.    Legal Standard**

Federal Rule of Civil Procedure 56(a) states that a

"court shall grant summary judgment" when "the movant

shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. Proc. 56(a). A fact is

"material" for purposes of summary judgment if it might

affect the outcome of the suit, and a "genuine" issue

exists if the evidence is such that a reasonable fact-

finder could return a verdict for the nonmovant.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).   The evidence, and any inferences based on
underlying facts, must be viewed in the light most
favorable to the nonmovant.   <u>Twentieth Century-Fox Film
Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir.
1983).   In ruling on a motion for summary judgment, the
court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists.   <u>Anderson</u>, 477 U.S. at 255.

   Under Rule 56, the party moving for summary
judgment has the initial burden to show "no genuine
dispute as to any material fact."   Fed. R. Civ. P.
56(a); <u>see Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>,
210 F.3d 1099, 1102-03 (9th Cir. 2000).   The burden
then shifts to the non-moving party to produce
admissible evidence showing a triable issue of fact.
<u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03.

**B.   Discussion**

   1.   <u>Plaintiff's Non-Opposition</u>

   On October 16, 2018, Plaintiff filed a Notice of
Non-Opposition [27] to Defendant's Motion for Summary
Judgment.   While Plaintiff does not oppose this Motion,
Local Rule 7-12 prohibits the Court from granting
summary judgment solely based on the failure to file an
opposition.   Thus, the Court will exercise its
discretion to rule on the merits of Defendant's Motion.

2.   <u>There is a Valid Liability Limitation</u>

2        Liability limitations in a contract of passage must

3   be "reasonably communicated" to a plaintiff.  <u>Dempsey</u>

4   <u>v. Norwegian Cruise Line</u>, 972 F.2d 998 (9th Cir. 1992);

5   <u>Deiro v. Am. Airlines, Inc.</u>, 816 F.2d 1360, 1363-64

6   (9th Cir. 1987)("The basic inquiry is whether, and to

7   what extent, a passenger, who in almost all cases does

8   not actually bargain for a particular term or condition

9   of a contract of passage, but who nevertheless accepts

10  or signs the ticket before embarkation, is bound by the

11  fine print of the ticket.").  Whether the limitation is

12  "reasonably communicated" is a question of law to be

13  determined by the court.  <u>Dempsey</u>, 972 F.2d at 999.

14       First, courts examine the physical characteristics

15  of a ticket or contract such as the "size of type,

16  conspicuousness and clarity of notice on the face of

17  the ticket, and the ease with which a passenger can

18  read the provisions in question."  <u>See</u> <u>Deiro</u>, 816 F.2d

19  at 1364 (citation omitted).  Here, Defendant argues

20  that there is a valid limitation on Defendant's

21  liability in the Contract.  The front of the Contract,

22  in capitalized and bolded text, grabs the attention of

23  passengers by stating, "**IMPORTANT NOTICE TO GUESTS:**

24  **PLEASE CAREFULLY READ THE FOLLOWING PASSAGE CONTRACT**

25  **TERM THAT GOVERN ALL DEALINGS BETWEEN YOU AND**

26  **[Defendant], AFFECT YOUR LEGAL RIGHTS AND ARE BINDING**

27  **ON YOU** . . . ."  Black Decl. ¶ 11.  The warning directs

28  passengers specifically to section 14, titled in large

bolded capital letters, "**LIMITATIONS ON CARRIER'S**
**LIABILITY; INDEMNIFICATION**," and which states that
shore excursions are not subject to Defendant's control
and that Defendant "accepts no liability for any . . .
injury . . . arising from any excursion." Id. ¶ 12.
The Contract further states Defendant "makes no
warranty, either express or implied, regarding the
suitability, safety, insurance or other aspects of any
such contractors, transportation, tours, services,
products or facilities." Id. In light of the
undisputed language of the Contract, and that Plaintiff
has not opposed to provide any evidence to the
contrary, there is no genuine issue that Plaintiff was
directed to the liability limitations and could read
them with ease. See Dempsey, 972 F.2d at 999 (finding
sufficient that the ticket contained an "important
notice" on the front four pages informing passengers to
read carefully for "important legal rights"); Wallis v.
Princess Cruises, Inc., 306 F.3d 827, 836 (9th Cir.
2002)(finding the heading "LIMITATIONS ON CARRIER'S
LIABILITY; INDEMNIFICATION" and its warnings to be
reasonable notice).

In addition to the physical characteristics of the
Contract, courts also examine "any extrinsic factors
indicating the passenger's ability to become
meaningfully informed of the contractual terms at
stake." Deiro, 816 F.2d at 1364. Plaintiff was
required to review the terms and conditions of the

Contract before she could complete the online booking process. Black Decl. ¶ 8. Additionally, the terms are also available on Defendant's website. Id. ¶ 10. Plaintiff accepted the Contract's terms on February 6, 2016, and printed her boarding pass on March 13, 2016. Black Decl. ¶¶ 8-9; id. Ex. 1 at 24. Plaintiff would not have been permitted to print her boarding pass without first accepting the terms. Id. ¶ 9. The voyage began on April 17, 2016. Id. ¶ 4. Thus, Plaintiff had ample time and opportunity to read the Contract and become informed of its terms. See Kendall v. Am. Hawaii Cruises, 704 F. Supp. 1010, 1016 (D. Haw. 1989)(finding possession of the ticket before the cruise provides "ample opportunity to familiarize themselves with the contract's time limitations"). Even if Plaintiff had not read the contract, that does not free her from the binding effect of its provisions. See, e.g., Corna v. American Hawaii Cruises, Inc., 794 F. Supp. 1005, 1010 (D. Haw. 1992)("A party cannot avoid the effect of contractual provisions to which he is a party by simply choosing not to read the contract."); Shankles v. Costa Armatori, S.P.A., 722 F.2d 861 (1st Cir. 1983)("Although a passenger may almost never read all of the fine print on a ticket upon purchase . . . the same passenger might very well be expected to . . . in the event of an accident resulting in a loss or injury.").

        In sum, in light of the above undisputed facts and

Plaintiff's non-opposition, there is no genuine issue
that the liability limitation was reasonably
communicated to Plaintiff.

    3.  <u>No Joint Venture or Agency Liability</u>

     Plaintiff also alleges negligence against Defendant
based on joint venture, or alternatively, that De Buck
was the "apparent agent" of Defendant.  <u>See</u> Compl. ¶¶
30, 45, 54.  Defendant argues that De Buck is an
independent contractor, and thus Defendant cannot be
liable.  There is no dispute over the following facts
showing that Defendant did not have any control over
the excursion on which Plaintiff was injured: (1) The
Ghent by Canal Cruise excursion was operated by De
Buck, Freeman Decl. ¶ 2; (2) Defendant has no
affiliation or ownership interest in De Buck, and no
control over De Buck's operations, Drumalds Decl. ¶ 4;
and (3) De Buck provides the transportation of
passengers to and from the excursion, Freeman Decl. ¶¶
2-3.  There is also no dispute that Defendant's
relationship with De Buck is defined in both the
Operator Agreement and Operator Manual, stating that
the "control and responsibility of all aspects of the
Shore Excursion remain exclusively with [De Buck]."
Drumalds Decl. ¶ 3; <u>id.</u>, Ex. 1, section 6.5.  The
Operator Agreement further states that De Buck is
treated as an independent contractor, and "[n]othing in
this Agreement shall be construed as creating a
partnership, joint venture or employer-employee

relationship." _Id._, Ex. 1 section 15.4.[1]  Finally, the
Operator Manual states, in part, that De Buck is
"responsible for the safety and security of passengers"
and that "responsibility will at all times remain with
[De Buck]." _Id._, Ex. 2, section 6(a).  De Buck
accepted the terms of both the Operator Agreement and
the Operator Manual.  _Id._ ¶ 5.  With no opposition or
evidence by Plaintiff showing otherwise, there is no
genuine issue that there is no joint venture and De
Buck is not an "apparent agent" of Defendant's, because
De Buck operates as an independent contractor.

    In light of these facts, there is no dispute that
Defendant took positive steps to avoid agency liability
and cannot be held liable for any negligence on a
theory of joint venture or agency liability.  See
Dubret v. Holland America Line Westours, Inc., 25 F.
Supp. 2d 1151, 1153 (W.D. Wash. 1998)(finding
sufficient for summary judgment defendant's brochure
and contract stating plainly that on-shore service
would be provided by independent contractors and
defendant would assume no liability).  As many courts
have found in similar cases where plaintiffs have been
injured during an off-ship excursion, such liability

_____

    [1] Section 15.4 goes on to state that Operators like De Buck
shall be treated as independent contractors and that Defendant
will not "furnish a salary, sick pay, vacation, insurance
coverage, retirement benefits, worker's compensation insurance or
any other fringe benefit to [De Buck] or any of its employees or
agents." _Id._

waivers with independent contractors are enforceable and summary judgment dismissing claims based on operation of a joint venture is appropriate.  <u>See</u>, <u>e.g.</u>, <u>id.</u> (granting summary judgment where the plaintiff was injured during an off-ship excursion operated by an independent third party); <u>Perry v. HAL Antillen NV</u>, No. C12-0850JLR, 2013 WL 2099499, at *25 (W.D. Wash. 2013)(same where plaintiff was run over by an off-ship tour minibus after exiting it); <u>Henderson v. Carnival Corp.</u>, 125 F. Supp. 2d 1375, 1377 (S.D. Fla. 2000)(same where plaintiff was injured during off-ship excursion on a catamaran operated by an independent third party); <u>Ramage v. Forbes Int'l, Inc.</u>, 987 F. Supp. 810, 815 (C.D. Cal. 1997)(same where plaintiff was injured during a bus excursion operated by an independent third party).

///
///
///
///
///
///
///
///
///
///
///
///

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Princess Cruise Line, Ltd.'s Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: November 8, 2018        s/ RONALD S.W. LEW

                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge